19 F.3d 1444
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jackie Sue REYNOLDS, Defendant-Appellant.
 No. 93-6411.
 United States Court of Appeals, Tenth Circuit.
 March 30, 1994.
 
 ORDER AND JUDGMENT[1]
 Before MOORE, ANDERSON, and KELLY, Circuit Judges.
 
 
 1
 This appeal questions the district court's upward departure that took into consideration criminal conduct not statutorily included in the crime of conviction. We hold even though the resulting sentence was based upon a guideline for a crime definitionally unrelated to defendant's guilty plea, the facts weighed by the district court were sufficiently connected to the crime of conviction to make that guideline apposite. Because those facts were not considered by the Sentencing Commission in the creation of the guideline for the crime of conviction, we conclude the departure was warranted and affirm.
 
 
 2
 Defendant Jackie Sue Reynolds hired Edwin Browning to burn her house so she could collect the proceeds from the policy insuring the structure. Using the mails after the deed was accomplished, Ms. Reynolds sent a fraudulent claim of loss to her carrier. Ms. Reynolds ultimately collected over $34,000 on that claim and paid Mr. Browning $400 for his services.
 
 
 3
 For reasons not significant here, neither the burning nor the fraud was brought to light for some time. Unfortunately for Ms. Reynolds, Mr. Browning had a relationship with another person who informed the FBI of Mr. Browning's activities. This same person also surreptitiously recorded a conversation with Ms. Reynolds during which the latter admitted the fraudulent burning of the house. Eventually, both Ms. Reynolds and Mr. Browning were indicted for conspiracy to commit mail fraud.
 
 
 4
 According to the government, it believed Mr. Browning was the more culpable of the two defendants because of his other alleged criminal conduct, but the prosecutor thought convicting him would be more difficult than convicting Ms. Reynolds. Thus, the government entered into a plea agreement with her in which she consented to pleading guilty to misprison of a felony in exchange for her testimony against Mr. Browning.
 
 
 5
 Although both sides presumed Ms. Reynolds was facing possible incarceration because of her minor criminal history, they also assumed her guideline sentencing range would be zero to three months. The presentence report bolstered that belief, but the officer preparing the report suggested, nonetheless, the offense conduct would support an upward departure in the range established for the crime of mail fraud as the felony underlying the guilty plea.
 
 
 6
 Defendant objected to this aspect of the report but was orally notified prior to the day of sentencing the court was considering upward departure based upon the crime of arson. Over defendant's objection that her acts would not support conviction of the statutory offense of arson, the district court disagreed and held arson was the crime most analogous to her criminal behavior for the purpose of sentencing.
 
 
 7
 The court stated the seriousness of what Mr. Reynolds actually did "seem[ed] to be overlook[ed]." The court believed the burning of a house in a neighborhood where there were adjoining homes and people living nearby had potential for great danger. The court added: "[F]ortunately, it didn't turn out as serious as it could have, but that's not because of what you did. People could have been killed; other houses could have been burn[ed] down...." The court then added:
 
 
 8
 I make a finding that there exists aggravating circumstances of a kind and to a degree not adequately taken into consideration by the Sentencing Commission in forming the guidelines that should result in a sentence in this case. And I do find that arson is the appropriate guideline.
 
 
 9
 Upon those circumstances, the court sentenced the defendant to twenty-four months in custody, imposed community service in place of a fine or restitution, and ordered supervised release. Twenty-four months is within the statutory sentence for the crime of misprison.
 
 
 10
 On appeal, defendant asserts the district court erred in the departure because the guidelines restrict sentencing to the conduct relevant to the crime of conviction. She argues the district court went beyond that behavior to include conduct related to the "real offense." Defendant contends the guidelines are not expansive enough to permit such a broad view of sentencing.
 
 
 11
 Although the government initially disagreed with the district court's analysis, it now defends the result. It takes the position that the guidelines are neither "real offense" nor "offense of conviction" oriented. Relying upon United States v. Jackson, 921 F.2d 985, 989 (10th Cir.1990) (en banc), the prosecution postulates the district court has considerable discretion in sentencing, and so long as the ultimate sentence relates to an appropriate analogous offense and is uniform and proportionate, the departure is proper.
 
 
 12
 Our review of a departure is twofold. We determine first whether the sentence was imposed in violation of law and then whether it is reasonable. Williams v. United States, --- U.S. ----, 112 S.Ct. 1112, 1120 (1992). Included within the first step are whether the circumstances cited by the district court warrant departure and whether there are clearly erroneous factual conclusions relied upon for the decision to depart. United States v. Flinn, 987 F.2d 1498, 1500 (10th Cir.1993).
 
 
 13
 Although defendant voices concern that allowing a court to stray from the offense of conviction in fashioning a sentence would permit the court to obviate the prosecutor's charging discretion, the guidelines place little significance on that concern. Indeed, as the Second Circuit has noted, the ultimate system is a compromise between real offense and charged offense limitations. United States v. Kim, 896 F.2d 678, 683 (2d Cir.1990). For example, the Kim court pointed out "a physical injury inflicted in the course of committing a fraud, though not sufficiently typical to warrant identification as a specific offense characteristic with a specified base level adjustment, would justify a departure above the offense level for fraud." Id.; see also United States v. Zamarripa, 905 F.2d 337, 342 (10th Cir.1990) (approving Kim's assessment of means by which misconduct not resulting in conviction may be factored into sentencing decisions).
 
 
 14
 Like physical harm that is not ordinarily a handmaiden of fraud, the dangerous and reckless act of torching a house in the middle of a neighborhood is conduct beyond the crimes of mail fraud or misprison. Yet, in this case, we believe that conduct is sufficiently related to the criminal acts which preceded the charged offense to permit them to be properly considered a part of the sentencing matrix. Kim, 896 F.2d at 683. Indeed, the fraud and the misprison of that fraud could not have occurred without the burning of defendant's home. Thus, the proper nexus and the requisite absence of the conduct from the guideline having been established, the circumstances of this case warrant departure.[2]
 
 
 15
 The facts relied upon by the district court related to the dangerous conduct of burning a dwelling in a neighborhood, thereby jeopardizing the safety of other people and their property. These circumstances are not contested by defendant except to argue they should not be considered at all. We therefore conclude the facts relied on are not clearly erroneous.
 
 
 16
 Finally, we consider whether the departure was reasonable. In United States v. Jackson, 921 F.2d at 989, we created a three-part requirement for the district court to follow to establish the reasonableness of departure. First, the court "must explain why the Guidelines sentence is inadequate." Second, it "must identify a sufficient factual basis for departure." Third, there must be an explanation of "why that specific degree of departure is reasonable." While brief, perhaps because of the simplicity of the case, the district court's reasoning comports with the Jackson requirement.
 
 
 17
 The guideline sentences for either fraud or misprison are inadequate because they fail to consider the danger created by defendant's conduct. It is undisputed defendant committed the acts giving rise to that danger, so there is a factual basis for departure. Finally, the degree of departure is required because the guideline for arson is the most analogous as it includes consideration of the dangers inherent in burning a structure. We therefore conclude the departure is reasonable.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Defendant cites and relies upon United States v. Kelly, 1 F.3d 1137, 1140 (10th Cir.1993), but the case is inapposite. In that case, we merely held in sentencing a defendant acquitted of murder in the first degree but convicted of murder in the second degree the district court erred by concluding premeditation was an aggravating circumstance not considered by the Sentencing Commission in establishing the guideline for murder in the second degree. Because the only distinction in the two degrees of murder is the presence or absence of premeditation, the Commission had to have recognized the lack of premeditation in the second degree guideline. For that reason, we held an upward departure based on the presence of premeditation was an improper application of the guidelines. There is no parallel in this case